# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCEL D'ENTREMONT, | Case No. 1:22-cv-00376-SKO |
| Plaintiff, | |
| v. | **ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT** |
| UNITED STATES OF AMERICA, | |
| Defendant. | (Docs. 27, 30) |

## I.     INTRODUCTION

On March 30, 2022, Plaintiff Marcel D'Entremont filed this action against the United States (the "Government" or the "Defendant"). Plaintiff filed a motion for summary judgment (Doc. 27) on December 16, 2022, and the Government filed a response/cross-motion for summary judgment (Doc. 30) on January 27, 2023.  Plaintiff filed his opposition to the Government's motion (Doc. 35) on February 27, 2023, and on March 14, 2023, the Government replied (Doc. 36).[1]

Plaintiff contends the Government acted arbitrarily and capriciously in finding that he was not entitled to benefits under the Traumatic Servicemembers' Group Life Insurance Program ("TSGLI").  The record does not support this claim.  Therefore, upon consideration of the motions and the administrative record, and for the reasons discussed below, the Court GRANTS Defendant's cross-motion for summary judgment (Doc. 30) and DENIES Plaintiff's motion for summary judgment (Doc. 27).

---

[1] The parties have consented to the jurisdiction of U.S. Magistrate Judge Sheila K. Oberto.  (Docs. 38, 39).

## II. BACKGROUND

### A. The Traumatic Servicemembers' Group Life Insurance Program

The U.S. Government operates a Traumatic Servicemembers' Group Life Insurance Program ("TSGLI"), which offers one-time payments to "provide short-term financial assistance to servicemembers and veterans who have suffered from traumatic injuries." *Barker v. United States*, 404 F. Supp. 3d 251, 254 (D.D.C. 2019) (citing 38 U.S.C. § 1980A). To qualify for TSGLI benefits, a servicemember must sustain a traumatic injury that results in a "qualifying loss" within two years of the injury. 38 U.S.C. § 1980A(a)(1); 38 C.F.R. § 9.20(d)(4)). Among the "qualif[ied] losses" is "the inability to carry out the activities of daily living ("ADLs") resulting from traumatic injury to the brain." 38 U.S.C. § 1980A(b)(1)(H). A person cannot carry out ADLs if he cannot independently perform two of the six activities: bathing, continence, dressing, eating, toileting or transferring in or out of a bed or chair with or without equipment. *Id.* at § 1980A(b)(2)(D); 38 C.F.R. § 9.20(e)(6)(vi).

Neither the TSGLI statute nor its regulation defines what it means to "independently perform activities," but the Department of Veterans Affairs has promulgated regulatory guidance on this issue. U.S. Dep't of Veterans Affs., Traumatic Injury Protection Under Servicemembers' Group Life Insurance (TSGLI): A Procedural Guide (Nov. 2021), https://www.benefits.va.gov/insurance/docs/TSGLIProceduresGuide.pdf (the "TSGLI Guide"); *see also* Doc. 30-3. Under the TSGLI Guide, a person cannot independently perform ADL if they require physical, stand-by, or verbal assistance. (TSGLI Guide at 19). If a person can perform an activity with accommodating equipment, such as a cane, walker or commode or do so through adaptive behavior, the person is considered capable of independently performing the activity. (TSGLI Guide at 21). A person is entitled to benefits only if the inability last for a minimum 15 consecutive days, and at that point, a person is entitled to a lump sum of $25,000. (TSGLI Guide at 23). Additional lump sums are due at the 30th, 60th and 90th consecutive days of inability. (TSGLI Guide at 23). TSGLI payments are not permitted for "mental disorder[s] whether or not caused by a traumatic injury," nor for "physical or mental illness[es] or disease[s], whether or not caused by a traumatic injury, [unless] . . . caused by biological, chemical, or radiological weapons

or accidental ingestion of a contaminated substance." 38 C.F.R. § 9.20(e)(4).

A servicemember's branch determines whether an individual is covered by the TSGLI and sustained a qualifying loss. 38 U.S.C. § 1980A(f)). If an application for benefits is denied, servicemembers may appeal adverse determinations through a three-level process within their branch of the uniformed service before seeking review from a federal district court. 38 C.F.R. § 9.20(h)(1); 38 U.S.C. § 1975. Army service members first file a "reconsideration" of their claims at the U.S. Army TSGLI Office before appealing to U.S. Army Human Resources Command ("HRC") TSGLI Appeals Board. (TSGLI Guide at 74). The final avenue for relief (before seeking judicial review) is through an appeal to the Army Board for Correction of Military Records (the "ABCMR" or the "Board"). (TSGLI Guide at 74).

**B.    Plaintiff's Injury**

Plaintiff is a former servicemember of the U.S. Army. (Doc. 27-1 at 4). On December 30, 2005, he was injured when the vehicle in front of him on a convoy escort was hit with an improvised explosive device ("IED") outside of Baghdad, Iraq. (Doc. 27-1 at 4); (AR 43, 202, 669). There are some discrepancies about what occurred immediately after the blast. Plaintiff alleges the blast "threw his body backward and rendered him unconscious" and that he suffered "severe" burns to his neck (Doc. 27-1 at 5), while the Government contends the evidence does not support these allegations (Doc. 30-1 at 9 [citing various declarations in the AR by other soldiers]). An aid station physician evaluated Plaintiff roughly 45 minutes after the blast and found a burn on the back of Plaintiff's neck, but noted no loss of consciousness or lightheadedness. (AR 202). The physician instructed Plaintiff to return for further evaluation if he experienced any neurological changes or other notable symptoms. (AR 202). The next day, Plaintiff reported slight ringing in his ears and pain in his neck and back. (AR 203). No other soldiers suffered severe injuries from the blast. (AR 672).

Doctors reassessed Plaintiff in January 2006 in El Paso, Texas. (AR 93-95). Plaintiff reported his health to be "the same" as previously assessed and verified he suffered from no conditions that would limit his ability to work in his primary military specialty. (AR 93). The treating physician identified Plaintiff's injury as a "shrapnel burn due to IED explosion," noting

Plaintiff was mentally sound and any resulting disability would only be temporary. (AR 95).

Plaintiff prepared a sworn statement on January 16, 2006, noting he had been treated for a neck burn on December 30, 2005, and all injuries had been documented and filed. (AR 43, 96). He also confirmed that doctors had treated him the following day for ringing in his ears and soreness in his neck, back and shoulders. (AR 43-44, 96-97). Plaintiff was awarded the Purple Heart. (AR 532).

**C.     Plaintiff's Application for TSGLI Benefits**

Plaintiff filed his application for TSGLI benefits on February 24, 2006, listing his injury as resulting from being "blown up by a roadside bomb/traumatic mental stress." (AR 1-3). A certification by psychologist Stanley Bunce accompanied the application and stated that Plaintiff could not carry out ADL because of a traumatic injury other than a brain injury. (AR 4). Dr. Bunce also checked boxing indicating Plaintiff could not independently perform dressing, eating or transferring functions for 120 days." (AR 4). He wrote Plaintiff "has trouble with dressing, because putting on clothes means soldier has to go out, is afraid to leave because of traumatic experience with explosion, has trouble eating and transferring." (AR 4). No other medical records accompanied Dr. Bunce's certification, nor did Dr. Bunce elaborate on his statements. (*See* AR 4)

The Army denied Plaintiff's application on April 26, 2006, citing a lack of "medical documents to support the severity of this injury and 120 days of ADLs compromised." (AR 7-9). The Army also found that Dr. Bunce seemingly connected Plaintiff's symptoms to PTSD (AR 7), which is not a qualifying injury under the policy. (AR 9). Plaintiff appealed to the Army's Office of TSGLI and the HRC TSGLI Appeals Board, and both upheld the denial. (*See, e.g.,* AR 14, 16-17, 60-62, 419, 595, 598). Plaintiff submitted additional medical records and other materials with his administrative appeals. The additions included a letter from Plaintiff which stated, "What keeps me from my daily routines are the night mares that I have everyday since December 30, 2005[.]" (AR 42). Neither Plaintiff nor his wife mentions ADLs in the letters they submitted with Plaintiff's appeals. (AR 41-42).

Plaintiff filed an application with the ABCMR seeking reconsideration on September 19, 2016 (the "2016 appeal"). He submitted Form SGLV 8600 to the ABCMR on July 11, 2018. (AR

4

73-87). The form included a statement from Dr. Krishna Prabhakar, which noted Plaintiff could not bathe, dress and transfer independently because of his migraines and dizziness. (AR 84-86). On December 9, 2019, the ABCMR received an advisory medical opinion recommending the board deny Plaintiff's 2016 appeal. (AR 547-50). The opinion reviewed Plaintiff's personnel and medical records and found that Plaintiff had sustained a minor neck injury in the IED blast, which did not amount to a sustained loss under TSGLI. (AR 547-50). Plaintiff filed another application for TSGLI benefits on February 18, 2020, with the ABCMR. (AR 542-44).

On January 21, 2021, the ABCMR denied Plaintiff's 2016 appeal. (AR 531). The ABCMR found there was no clear evidence of a medical disability or condition that would support the loss of two or more ADLs. (AR 536). In reaching its conclusion, the ABCMR stated "[t]he medical documentation from the date of the IED blast exposure indicated his physical injury was minor and not catastrophic, and the physical injury was treated as an outpatient and he was ineligible for TSGLI benefits at this time." The ABCMR received a second medical advisory opinion on August 17, 2021, and the opinion recommended denying Plaintiff's 2020 appeal because there was no medical evidence suggesting Plaintiff could not perform ADLs. (AR 600-01).

On April 21, 2022, the ABCMR denied the 2020 Appeal, which constituted the agency's final action in the matter. (AR 668-81). Again, the ABCMR noted "[t]here is no clinical indication that the applicant sustained a physical traumatic injury that would qualify as a scheduled loss under the TSGLI schedule of losses. The medical documentation from the date of the IED blast exposure indicated the physical injury was minor and not catastrophic, and the physical injury was treated as an outpatient." (AR 674). The ABCMR concluded there was no evidence to support that Plaintiff suffered a loss of two or more ADLs for any period, precluding an award. (AR 674).

### III.     LEGAL STANDARD

Summary judgment motions are typically adjudicated under Fed. R. Civ. P. 56(c). The "genuine dispute of material fact" standard does not apply when reviewing summary judgment motions related to agency decisions. *San Joaquin River Grp. Auth. v. Nat'l Marine Fisheries Serv.*, 819 F. Supp. 2d 1077, 1083–84 (E.D. Cal. 2011). Instead, the Court decides the legal question of "whether the agency could reasonably have found the facts as it did." *City & County*

of *San Francisco v. U.S.*, 130 F.3d 873, 877 (citing *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985)). The district court cannot resolve factual disputes, even if they existed before the agency. *Occidental*, 753 F.2d at 766.

District courts have jurisdiction to adjudicate TSGLI-related claims under 38 U.S.C. § 1975. Neither § 1975 nor § 1980A specify a standard of review, but other courts have concluded TSGLI decisions are reviewed according to the Administrative Procedure Act (the "APA").[2] Under the APA, a court must set aside agency decisions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency's decision may be arbitrary and capricious

> if the agency has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of the agency's expertise.

*Pacific Dawn LLC v. Pritzker*, 831 F.3d 1166, 1173 (9th Cir. 2016) (citations and internal quotation marks omitted). "This standard of review is highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision." *Pac. Coast Fed'n of Fishermen's Ass'ns v. Blank*, 693 F.3d 1084, 1091 (9th Cir. 2012) (citation and internal quotation marks omitted).[3] However, the court must set aside an agency decision where there is no evidence to support the decision or . . . the decision was based on an improper understanding of the law." *Kazarian v. U.S. Citizenship & Immigration Servs.*, 596 F.3d 1115, 1118 (9th Cir. 2010). The district court's standard of review is narrow, and it cannot substitute its own judgment for that of the agency. *San Francisco*, 130 F.3d at 877.

---

[2] *See, e.g.*, *Cadovec v. United States*, No. 5:22-cv-00492-MCS-SP, 2023 WL 3431921, at *4 (C.D. Cal. March 29, 2023); *Greenwood v. United States*, No. 16cv1754 DMS (DHB), 2017 WL 2445535, at *2–3 (S.D. Cal. June 6, 2017); *Austin v. U.S., Dep't of the U.S. Army*, 614 F. App'x 198, 205–06 (5th Cir. 2015); *Barker v. United States*, 404 F. Supp. 3d 251, 261 (D.D.C. 2019);

[3] Some courts review decisions by military review boards for the correction of military records under "an unusually deferential application of the 'arbitrary and capricious' standard." *See Piersall v. Winter*, 435 F.3d 319, 324 (D.C. Cir. 2006); *Bolton v. Dep't of the Navy Bd. for Corr. of Naval Records*, 914 F.3d 401, 407 (6th Cir. 2019). The Ninth Circuit has not addressed this issue. However, because the Court concludes that the Government's denial was not arbitrary and capricious under the ordinary APA standard, it need not determine whether an "unusually deferential" standard applies here.

## IV.  DISCUSSION

Plaintiff alleges he suffered a Traumatic Brain Injury ("TBI") in December 2005 that rendered him unable to independently perform three ADLs (bathing, dressing and transferring), and the ABCMR arbitrarily and capriciously denied him TSGLI benefits for this injury. Plaintiff relies on the definition of traumatic injury under 38 C.F.R. § 920(c)(1), which provides "[a] traumatic injury is physical damage to a living body that is caused by a traumatic event." Plaintiff continues that two medical providers certified his inability to perform ADLs, demonstrating he suffered a covered loss. (Doc. 27-1 at 13).

Plaintiff has not shown he suffered a TBI as required to recover under the policy. Only two medical records reference a TBI before December 30, 2007.[4] The first is a May 8, 2007, note from a VA social worker who contacted Plaintiff to discuss case management. (AR 265). The note states, "Veteran has screen positive for TBI. Veteran agreed to contact [social worker] during his next appointment at this facility so that [social worker] can complete secondary TBI screen." (AR 266). The social worker did not elaborate any further on the TBI assessment. (AR 266). The second record is a note from a VA social worker who performed a secondary TBI assessment telephonically. (AR 264). This note does not include any conclusions from this assessment. (AR 264). Instead, the assessment states, "Veteran presents with psychological symptoms. He is being seen by Dr. Bunce at present, but needs an additional appointment with Dr. Bunce and Dr. Khalifa for medication management. He does not appear to have many physical symptoms aside from hearing impairment, which has already been addressed." (AR 260). None of the treatment notes from immediately after the blast indicate Plaintiff suffered a TBI. (AR 43, 96-97, 202).

While Plaintiff undoubtedly suffers from medical conditions resulting from the blast, they are not conditions allowing recovery under TSGLI.[5] Under 38 C.F.R. § 920(c)(2), a traumatic injury does not include damage caused by a mental disorder or mental illness unless it is caused by biological, chemical, or radiological weapons or accidental ingestion of a contaminated

---

[4] Because TSGLI benefits require a claimant to show a loss of ADLs within two years of the traumatic event, December 30, 2007, is the date by which Plaintiff must show he suffered a covered loss.

[5] The Department of Veteran Affairs assigned Plaintiff a 1000 percent disability rating in 2011 and granted full Social Security Benefits in 2009. (AR 165).

7

1  substance, which he does not allege. 38 C.F.R. § 9.20(e)(4). Plaintiff's citations demonstrate he
2  has PTSD and panic disorder "related to his experiences in the Iraq conflict in which IED blasts
3  were common place and vehicles in which he was driving were particularly vulnerable," but these
4  are the exact kind of conditions exempted from the definition of TBI under TSGLI. On this
5  ground, Plaintiff has not shown the Government's denial of his TSGLI claim was arbitrary or
6  capricious.

7  Plaintiff has yet to demonstrate he could not perform two ADLs at any point prior to
8  December 2007. Plaintiff relies on the conclusory statements by Dr. Bunce and Dr. Prabhakar
9  that Plaintiff could not perform ADLs. This is unpersuasive. First, Dr. Bunce only noted Plaintiff
10 *struggled* to perform ADLs, and he attributed those difficulties to Plaintiff's PTSD, which
11 prohibits payment under the TSGLI. Dr. Prabhakar based his conclusion on Plaintiff's medical
12 records (as opposed to his own observation) and the ABCMR reviewed the same medical records
13 to reach its conclusion. Dr. Prabhakar provided no supporting documentation or other analysis in
14 his conclusions, leaving them virtually unreviewable. While Dr. Prabhakar was a treating primary
15 care provider for Plaintiff, none of his treatment records from before December 2007 note Plaintiff
16 struggled to perform ADLs. (AR 261-62, 258-60, 266-67, 269-70). Other courts have found that
17 the Board may disregard medical opinions without supportive documentation. *Cadovec v. United*
18 *States*, No. 5:22-cv-00492-MCS-SP, 2023 WL 3431921 (C.D. Cal. March 29, 2023) ("As several
19 courts have held, it is not arbitrary or capricious for the Board to attach little weight to Dr. Hopkins'
20 certification or to Dr. Janusziewicz's advisory opinion, which are post hoc medical opinions
21 providing no additional documentation contemporaneous to Plaintiff's injury."); *see also Austin v.*
22 *U.S., Dept. of the U.S. Army*, 614 Fed. Appx. 198, 205 (5th Cir. 2015) ("It was not arbitrary and
23 capricious for the Army to grant little weight to this certification, given the sparseness and
24 secondhand nature of Dr. Oishi's opinions."). The Government sought its own medical opinions,
25 which the Board was entitled to evaluate and rely upon. The district cannot substitute its own
26 judgment for that the of the agency. *San Francisco*, 130 F.3d at 877. As the Government points
27 out, Plaintiff underwent at least 20 medical evaluations in the two years after the blast, but none
28

show he could not independently perform ADLs.  The Plaintiff has not shown that the Government arbitrarily or capriciously denied his application for TSGLI benefits.

Lastly, Plaintiff contends the ABCMR should have applied the "benefit of the doubt" standard of 38 U.S.C. § 5107(b) in reviewing his application.  (Doc. 27-1).  While it is unclear whether this standard may apply in TSGLI cases,[6] Plaintiff did not raise this argument before the Board. (AR 450-54).  "To preserve an issue for review on appeal that issue must have been raised at the appropriate time during the administrative proceeding." *State of Cal., Dep't of Educ. v. Bennett*, 843 F.2d 333, 339 (9th Cir. 1988) (citing *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952)).  Because Plaintiff did not previously raise this argument to the agency, the Court rejects Plaintiff's "benefit of the doubt" argument as waived.[7]  Similarly, Plaintiff did not raise any arguments related to the "reasonable doubt doctrine" of 38 U.S.C. § 1154(b) below and waived this argument. *Bennett*, 843 F.2d at 339.

## V.     CONCLUSION

Based on the foregoing, the Court DENIES Plaintiff's motion for summary judgment, (Doc. 27), and GRANTS the United States' cross-motion for summary judgment (Doc. 30). Defendant's denial of TSGLI benefits is AFFIRMED.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant and against Plaintiff.  Accordingly, the Clerk of Court is directed to close this case.

IT IS SO ORDERED.

Dated:  **December 29, 2023**                    /s/ *Sheila K. Oberto*
                                                                    UNITED STATES MAGISTRATE JUDGE

---

[6] *See, e.g., Sorkness, v. United States*, No. 17-cv-2248, 2019 WL 4451990, at *4 (D.D.C. Sept. 17, 2019) (holding the 'benefit of the doubt standard' does not apply in TSGLI cases based on the plain language of the statute and regulations promulgated by the Department of Veterans Affairs); *Hayes v. United States*, No. 21-362, 2022 WL 2817598, at *4 (D.D.C. July 19, 2022) (adopting *Sorkness*); *but see Yearwood v. United States*, 124 F. Supp. 3d 1204, 1216 (N.D. Ala. 2015).

[7] Even if the "benefit-of-the-doubt standard applied, it would not bring Plaintiff relief.  The rule applies (and gives a claimant the benefit of the doubt) "[w]hen there is an approximate balance of positive and negative evidence regarding any issue material to the determination."  38 U.S.C. §5107(b).  There is no such balance here.

9